# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| VS. | ) | 2:95-cr-129-JHH-TMP |
| JAMAL DEMON MEANS, | ) | |
| Movant. | ) | |

## MEMORANDUM OF OPINION REGARDING ORDER DENYING MOTION TO REDUCE TERM OF IMPRISONMENT

The movant filed the above-styled motion (doc. #1655), commonly referred to as an 18 U.S.C. § 3582(c)(2) motion, on March 3, 2008, which the court treats as a timely motion requesting that this court modify or reduce his sentence pursuant to the retroactive crack cocaine amendment to the Sentencing Guidelines which became effective on November 1, 2007.   Before the court directs its attention to subject motion, it will set forth briefly relevant background, including a small portion of the lengthy history of movant's case.

On March 18, 1996, following a jury trial of approximately two months,[1] Jamal Demon Means (movant) and numerous persons related to him, as well as a

---

[1]  The undersigned was the trial and sentencing judge and is unusually familiar with the facts and all the court proceedings, including the countless post conviction proceedings initiated by movant, as well as many other defendants.

number of persons unrelated to him, were convicted on March 18, 1996 under

Count 2 (of a 133 count indictment) of violating 21 U.S.C. § 846 by conspiring to

distribute and possess with intent to distribute cocaine base (crack cocaine).[2]  Such

conspiracy is herein referred to as the Means conspiracy.  The following is a

summary description, supported by the evidence at trial, of the Means conspiracy

taken from the presentence investigation report prepared by the court's probation

office for purposes of sentencing movant.

> The Means conspiracy began in or about 1988 and ended
> May 25, 1995, when the indicted co-conspirators were arrested.  This
> conspiracy involved the defendants named in the indictment as well
> as others who have not been indicted.  Members of the conspiracy
> had varying roles and degrees of involvement and entered the
> conspiracy at various times.  In furtherance of the conspiracy, the
> defendants did the following:

> The defendants obtained cocaine and crack cocaine from
> various distribution points known as "crack houses" in Birmingham,
> Alabama.  These crack houses were real property which the
> defendants and others located and used to store or "stash" cocaine and
> cocaine base prior to its distribution, as a pick-up point for
> distribution to other locations, and as a point from which to sell the
> cocaine and crack cocaine to customers, including minors.  This
> operation began with one crack house, and later on into the
> conspiracy, as many as 10 crack houses were operated at one time.

---

[2] Jamal Demon Means was also convicted under eleven related substantive counts and found not guilty as to two counts.  Numerous other counts did not name him as a defendant or were dismissed prior to trial.

Some of the defendants taught indicted and unindicted co-conspirators how to manufacture or "rock up" the crack from cocaine in its powdered form. Some defendants received large sums of cash for selling and distributing cocaine and crack cocaine. Some were paid in cash or drugs ("tops" or 10% of drugs sold) for selling, storing, and distributing the drugs. During the conspiracy period, minors were used to distribute drugs, and drugs were distributed near schools and playgrounds.

Firearms were used and carried by some defendants to enforce collection of drug proceeds and to protect the proceeds from drug sales. Some defendants allegedly attempted to arrange for acts of violence to be committed against a law enforcement officer and a witness.

The defendants purchased vehicles which were used to transport cocaine and crack cocaine to customers, and to travel to and from various sites in the facilitation of controlled substance distribution.

The defendants and others developed surveillance and counter-surveillance techniques and information sources both within and outside of law enforcement agencies so that co-conspirators could be notified of pending searches, raids, and arrests.

The defendants and others used standard telephones, cellular and mobile telephones, and pagers to facilitate the drug distribution conspiracy and the collection and distribution of proceeds from drug distribution. Business procedures were established where coded language was used to represent drugs and monetary transactions but with minimal discussion of drugs and money. The defendants used "street names" or aliases to communicate with each other to prevent law enforcement from determining their true identities.

A "front" business, Father and Son's Car Wash, was established and maintained under the guise of being a legitimate business, in order to attempt to conceal both the drug trafficking operation and its profits. Cocaine, crack, marijuana, and drug

paraphernalia such as crack pipes, crack baggies, scales, etc., were sold from the building on both a wholesale and retail basis. A system was devised for obtaining, processing, distributing controlled substances/drug proceeds, and for secreting the proceeds, which ensured the continuity of the operation.

In order to avoid the filing of Currency Transaction Reports and the I.R.S. Form 8300, some of the defendants structured financial transactions. Real [sic] personal property was bought with the proceeds from drug-related activities and was often held in nominee names to prevent law enforcement from determining the source of the proceeds and the location of the property.

The defendants and others attempted to persuade co-conspirators to withhold information from investigators and the Grand Jury for the Northern District of Alabama. The defendants prepared false affidavits for co-conspirators, and attempted to persuade co-conspirators to give false statements to law enforcement and perjure themselves before the Grand Jury.

On March 19, 1996 the court dictated into the record its *attribution of drug quantities* to the members of the conspiracy found guilty under Count 2 of the indictment. The court expressly found that <u>all of the defendants</u> convicted under Count 2 were actively involved in the conspiracy at least as early as May 1, 1994, and remained engaged in criminal activity related to the conspiracy until May 25, 1995. As a result of each defendant's acts in furtherance of the conspiracy, and as a result of reasonably foreseeable acts on the part of other conspiracy members in furtherance of the conspiracy, a quantity **in excess of 2.3 kilograms of cocaine base or crack cocaine** was attributed to each of such defendants, including Jamal

4

Demon Means, for purposes of sentencing.  Further, with regard to seven of the

numerous members of the conspiracy, including Jamal Demon Means, the court

found that each of those defendants (excluding defendants Antonio King and

Jessie Turner) was also a member of the conspiracy from January 22, 1993, until

May 1, 1994.  As a result of such defendants' acts during that time frame in

furtherance of the conspiracy and as a result of reasonably foreseeable acts on the

part of other conspiracy members in furtherance of the conspiracy, a quantity **in

excess of 2.7 additional kilograms of cocaine base or crack cocaine** was

attributable to each of those defendants, including Jamal Demon Means, for

purposes of sentencing.  Such amounts were premised on the March 19, 1996

conservative findings by the court as to daily sales (seven days a week) of at least

six grams (sixty dime bags) of crack cocaine from at least one of the crack houses

for the relevant time frame.  Thus, on March 19, 1996 the court attributed to each

defendant who was a member of <u>both</u> conspiracies, including movant Jamal

Demon Means, **a quantity in excess of 5.0 kilograms of cocaine base or crack

cocaine.**

In May 2007, the U. S. Sentencing Commission (U.S.S.C.) submitted a

group of proposed amendments to the Sentencing Guidelines as they have done

annually since 1987.  One of these amendments, #706, represented the U.S.S.C.'s

attempt to mitigate the sentencing disparity for defendants convicted of crack

cocaine offenses as opposed to powder cocaine offenses.  In the absence of

congressional action to amend the 100:1 ratio found in the Title 21 statutes, the

U.S.S.C. proposed a method to reduce the potential sentences by lowering the

applicable guidelines for quantities of crack by two levels, thereby creating a ratio

ranging from about 25:1 to about 80:1 within the Guidelines framework.

      All of the proposed amendments, including the crack amendment, became

effective on November 1, 2007.[3]  Then in December 2007, following a period of

public discussion, the U.S.S.C. decided to make the crack amendment retroactive.

The effective date for retroactive application of the crack amendment became

March 3, 2008.  The U.S.S.C. also amended Guideline § 1B1.10 to include the

crack amendment (hereinafter referred to as "the amended policy statement").  As

such, as of March 3, 2008, the crack amendment and amended policy statement

apply to all relevant sentences, old and new. All of this was done pursuant to the

U.S.S.C.'s authority found at 28 U.S.C. § 994(u) and 18 U.S.C. § 3582(c).

      With that background, the court now turns to the current motion (doc. #

1655) of Jamal Demon Means to modify his term of imprisonment under 18

U.S.C. § 3582(c)(2).  The motion seeks the benefit of the crack amendment and

---

[3]  At this point, the crack amendment had no retroactive application.

the amended policy statement.  The focus of the § 3582(c)(2) motion is the 360 month custodial sentence imposed upon movant under Count 2.

The relevant custodial penalties for movant under Count 2 are set forth at 21 U.S.C. § 841 (b)(1)(A).[4]   The custodial statutory range for movant's sentence was not less than 10 years and not more than life.  As noted earlier, the court on March 19, 1996, expressly found that movant was actively involved in the Count 2 conspiracy continuously for a period that began as early as January 22, 1993 and remained in the criminal activity related to the conspiracy until May 25, 1995.  As a result of his acts, during that period in furtherance of the conspiracy, the court expressly attributed to him **a quantity in excess of 5.0 kilograms of cocaine base or crack cocaine.**  This attribution was confirmed while imposing the sentence on movant on May 29, 1996.

Relying on 18 U.S.C. § 3582(c)(2), movant now seeks a reduction of his 360 month sentence.  He claims entitlement to that reduction under Amendment 706 which became effective November 1, 2007 and which, as of March 3, 2008, became retroactively applicable.  His base offense level was 38 at the time of his

---

[4]  This penalty section provided "[i]n the case of a violation ... involving (ii) 5 kilograms or more of a mixture containing a detectable amount of ... cocaine .... or (iii) 50 grams or more of a mixture or substance ... which contains cocaine base ...." 21 U.S.C. § 841 (b)(1)(A). Thus, the statutory framework established a 100 to 1 ratio between cocaine base (crack) and cocaine powder.

sentencing on May 29, 1996.  Because the amount of crack attributed to movant

exceeded 4500 grams, movant's base offense level under Amendment 706

remained a level 38 under U.S.S.G § 2D1.1(c)(1), and the applicable guideline

range was not lowered.  Consequently, the motion for a reduction in sentence

pursuant to 18 U.S.C. § 3582(c)(2) is due to be denied.  See United States v.

James, 2008 WL 4867909 (C.A. 11 (Fla)); United States v. Walker, 2008 WL

5007201 (C.A. 11 (Fla)).  A separate order will be entered denying the motion.

Movant's attention is directed to the "Notice Concerning Appeals" set out below.

## NOTICE CONCERNING APPEALS

A § 3582(c)(2) motion is a continuation of the criminal proceeding;

therefore, a notice of appeal must be filed within ten days from the entry of the

judgment or order being appealed.  *See*, *United States v. Fair*, 326 F.3d 1317,

1318 (11th Cir.2003); *United States  v. Starks,* 2008 WL 351386 (11th Cir. 2008);

*Fed. R. App. P.* 4(b)(1)(A)(i).  If movant was represented by appointed counsel at

trial or on appeal, movant is not required to file a new application to proceed *in*

*forma pauperis* on appeal from the ruling on the § 3582(c)(2) motion. If movant

was represented by retained counsel at trial or on direct appeal but believes he is

now unable to afford counsel, movant should file an application  to proceed *in*

*forma pauperis* (accompanied by a certified copy of prison account statements for

8

the last six months) when he files notice of appeal from the ruling on the

§ 3582(c)(2) motion.  The Clerk is DIRECTED to provide movant with an

application to proceed *in forma pauperis* form.

      **DONE** this the   12th   day of December, 2008.


                                  SENIOR UNITED STATES DISTRICT JUDGE